UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
AVALDO AUSTIN,

                               Petitioner,                  **ORDER**

- v -

                                                               CV-07-960 (SJF)(VVP)

WILLIAM BROWN, Superintendent,

                               Defendant.
------------------------------------------------------------------x

        This matter was referred to me for a decision on a motion to quash a subpoena served by the Petitioner on a non-party, the Suffolk County Police Department (the "SCPD"). The subpoena sought records of the SCPD concerning their investigation of the murder of one Calvin Thompson. The SCPD's motion to quash rests on arguments that the records are irrelevant to the habeas petition before the court, and are protected by the law enforcement privilege.

        A brief statement of the relationship of the Thompson murder to the petitioner's conviction is necessary to understand the significance of the information sought by the petitioner's subpoena. The petitioner was convicted in Queens County for his participation in a shooting in which one of the two victims was murdered and the other was seriously injured. The two victims were brothers, Willie Scott and Andrasen Scott, a/k/a "Michael" Scott. The theory of the prosecution's case was that the motive for the petitioner's participation in that incident was to avenge the murder of Calvin Thompson, since it was believed by those close to Thompson that the Scott brothers were responsible for Thompson's murder. Although the Thompson murder apparently occurred in Suffolk County, and was thus investigated by the SCPD, the SCPD had no role in the investigation and conviction of the petitioner here since his crimes were prosecuted in Queens.

At the petitioner's trial, the surviving brother, Andrasen "Michael" Scott, was the only eyewitness who identified the petitioner as one of the perpetrators. At a collateral hearing after the petitioner was convicted, one of the New York Police Department detectives who investigated the case testified that she had learned from the SCPD that Scott was the last person to see Thompson alive. The petitioner thus seeks the SCPD's records of the investigation on the grounds that they may disclose evidence about Scott's participation in the Thompson murder that undercuts the credibility of Scott's testimony against the petitioner.

The SCPD's challenge to the subpoena on irrelevance grounds has some merit; the petitioner's theory concerning the relevance of any information in the SCPD's files to his habeas petition is attenuated. The *Brady* violation asserted by the petitioner has nothing to do with the SCPD's files. Rather, he argues that the Queens district attorney ignored his *Brady* obligations by failing to disclose that another eyewitness to the shooting of the Scott brothers, Jacqueline Jackson, had been unable to identify the petitioner as one of the participants in the shooting. The Queens district attorney also failed to disclose that Jackson contradicted Scott's testimony that there were four participants in the shooting; she said there were only two. Given the discrepancies between Scott's testimony and the information the prosecution failed to disclose, the petitioner hopes the SCPD's files contain information that casts further doubt on Scott's credibility and thus strengthens his argument that, but for the district attorney's *Brady* violations, the outcome of his trial would have been different.

The SCPD's opposition based on the law enforcement privilege also has some merit. The Second Circuit recognizes such a privilege, the purpose of which "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect

-2-

witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation of the City of New York v. Myerson*, 856 F.2d 481, 484 (2nd Cir. 1988). Because it is a qualified privilege, however, once it is properly invoked, "the court must balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information." *City of New York v. Beretta U.S.A. Corp.*, 222 F.R.D. 51, 65-66 (E.D.N.Y. 2004) (quoting *Raphael v. Aetna Casualty & Surety Co.*, 744 F. Supp. 71, 74-75 (S.D.N.Y.1990)).

As it appears the privilege is properly invoked here, the court must consider the interests at stake.[1] The petitioner, for his part, has articulated a substantial need to obtain as much information as possible about his chief accuser in order to mount as vigorous an attack as possible on his accuser's credibility. On the other hand, disclosure of non-public information concerning an ongoing criminal investigation always creates obvious difficulties. Maintaining the confidentiality of sources and witnesses is essential to obtaining information about criminal activities. Moreover, disclosing information about the investigation carries the risk of alerting persons that they are the subjects of investigation, and permits them to take steps to thwart the investigation by intimidating witnesses, constructing alibis, and destroying evidence. Although perhaps somewhat abated by the passage of time since the murder, these concerns undoubtedly remain with respect to the Thompson murder investigation. The court is mindful that disclosure of information about the Thompson investigation to the petitioner does not appear to carry the

---

[1]Counsel for the SCPD asserts the privilege based on the unsupported statement that the investigation of Thompson's murder remains active notwithstanding that it occurred almost ten years ago on December 27, 1997. Nevertheless, since there is no statute of limitations for a murder prosecution and as it appears to be undisputed that the murder has never been solved, a sufficient basis for asserting the privilege exists. An affidavit by a person with knowledge that the investigation remains open would have been preferable.

usual risk of interference because the petitioner presumably has no desire to thwart the police in finding Thompson's murderer. On the other hand, disclosure to the petitioner does carry a risk that he or others formerly close to Thompson might use the information to further avenge Thompson's murder, since the shooting of the Scott brothers was itself considered to be an act of vengeance.

In view of the somewhat attenuated connection between the information sought by the subpoena and the petitioner's claims here, and given the significant law enforcement privilege at issue, the court adopted the suggestion, made by counsel both for the petitioner and for the SCPD, that the court review the records *in camera* to permit a more precise balancing of the interests at play. Thus, in compliance with the court's direction at the close of the hearing, counsel for the SCPD has now submitted the records to the court. Upon review, the court finds only two documents of possible significance to the petitioner's claims here, a Supplementary Report dated January 6, 1998[2] and a Supplementary Report dated January 10, 1998, both prepared by Detective Eugene Walsh. Only portions of the reports, however, potentially pertain to the petitioner's claims. Thus, although the court will require production of the reports, they may be redacted as follows:

> 1. As to the January 6, 1998 Supplementary Report, following the word "<u>DETAILS</u>" at the top of the document everything may be redacted up to the numeral "2." After the numeral "2." the name and address of the person identified there may also be redacted. The paragraph immediately following numeral "2." must be disclosed, but the names of all individuals identified in the paragraph in capital letters (with the exception of "MIKE" and "MIKE SCOTT"), as well as all addresses, may be redacted. On the second page of the report, the numeral "3." should be disclosed, but the name and address of the individual identified after the

---

[2]Two Supplementary Reports submitted to the court bear the date of January 6, 1998; the one to which this opinion refers is the two-page report.

numeral "3." may be redacted. The paragraph immediately following numeral "3." must be disclosed, but the names of all individuals identified in the paragraph in capital letters (with the exception of "CALVIN," "MIKE" and "MIKE SCOTT"), as well as all addresses, may be redacted.

2. As to the January 10, 1994 Supplementary Report, the first two paragraphs of the first page are to be disclosed in full. The names of the individuals arrested and identified as No. 1. and No. 2 shall also be disclosed, but their dates of birth and addresses may be redacted. Thereafter on the first page the name, address and other identifying information of the witness interviewed at the 105 Precinct may be redacted. The paragraph that follows on the first page must be disclosed, but the addresses and telephone numbers may be redacted. All information on the second page may be redacted.

The SCPD's motion is thus granted in part and denied in part. The redacted reports shall be produced to the petitioner's counsel and to counsel for the respondent, subject, however, to the following protective order. The reports, and all of the information contained therein, are to be maintained in the strictest confidence by counsel for the petitioner and counsel for the respondent. Counsel may not disclose the redacted reports or any of the information contained in the reports to anyone, including the petitioner, other than the court. Production of the redacted reports shall be made within ten days.[3]

**SO ORDERED:**

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
October 22, 2007

---

[3] The court's conclusion that portions of these two reports should be produced is not a finding that they support his claims, or are in fact relevant to his claims in any way.